UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL REILLEY, JR.,<br>MICHAEL REILLEY, SR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-04540-RLM-MJD |
| | ) | |
| BUTLER UNIVERSITY,<br>STACIE COLSTON PATTERSON,<br>MARTHA DZIWLIK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| BUTLER UNIVERSITY, | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL REILLEY, JR., | ) | |
| | ) | |
| Counter Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Before the Court are Defendants' *Motion to Dismiss for Failure to State a Claim* [Dkt. 15], and Plaintiffs' *Motion for Leave to File Second Amended Complaint*.[1] [Dkt. 24.] District Judge Robert L. Miller, Jr. designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 38.] For the reasons set forth

---

[1] While the case was in state court, the initial complaint was amended to correct the caption and include an electronic signature.

below, the Magistrate Judge recommends Defendants' Motion to Dismiss be **GRANTED**. The
Magistrate Judge further recommends Plaintiff's Motion for Leave to File Second Amended
Complaint be **DENIED**.

## I.    Background

Plaintiffs Michael Reilley, Junior ("Reilley") and Michael Reilley, Senior ("Father")
allege gender-based discrimination under Title IX as well as state law claims of negligence,
intentional infliction of emotional distress, and breach of contract. In August 2015, Reilly
enrolled as a freshman at Defendant Butler University ("Butler"). [Dkt. 1-1 at 4, ¶ 27.] Reilley
was a member of the Butler football team and planned to major in business. [Dkt. 1-1 at 4–5, ¶¶
29–31.] On November 7, 2015, a female student ("Doe") reported to the Butler University Police
Department ("BUPD") that Reilley sexually assaulted her at an off-campus house. [Dkt. 1-1 at 5,
¶¶ 36–37.] Doe's complaint was forwarded to Defendant Stacie Colston Patterson ("Patterson"),
Butler's Title IX coordinator, who then referred the case to Defendant Martha Dziwlik
("Dziwlik"), Butler's Associate Director of Student Affairs Conduct/Title IX investigator, to
investigate the complaint. [Dkt. 1-1 at 5, ¶¶ 37, 42.]

In late November 2015, Patterson met with Reilley and informed him that a complaint
had been made against him. [Dkt. 1-1 at 5, ¶ 43.] During the meeting, Reilley informed Patterson
that he planned to transfer to Indiana University[2] ("IU") and desired to be a member of the IU
football team. [Dkt. 1-1 at 6, ¶¶ 44–46.] After the meeting, Patterson put a hold on Reilley's
account and he could not get his transcript released to IU. [Dkt. 1-1 at 6, ¶ 48.]

---

[2] Reilley intended to transfer to IU so he could enroll in its Kelly School of Business.

In early December 2015, the Title IX office scheduled an interview with Reilley on the same morning as one of his final exams, causing him emotional distress and adversely affecting his grade on the exam. [Dkt. 1-1 at 6, ¶¶ 52–53.]

On January 6, 2016, Dziwlik submitted her "Title IX Investigative Report" (the "Report"), concluding "by a preponderance of evidence … there is *sufficient* evidence to support the claim of non-consensual sexual intercourse." [Dkt. 1-1 at 7, ¶¶ 55, 59.] Dziwlik stated in the Report that Doe "said [Reilley] sat on the lid of the toilet and unzipped his pants. She said he did not ask for oral sex, she just thought it was what he wanted. She said, 'it was implied,' when he unzipped his pants she voluntarily performed oral sex on him." [Dkt. 1-1 at 7, ¶ 58.] The Report recommended that the case move forward to a formal hearing.  [Dkt. 1-1 at 7, ¶ 59.]

On January 15, 2016, the Equity Grievance Panel ("EGP") held a hearing. [Dkt. 1-1 at 9, ¶ 78.] Father attended the hearing as Reilley's advisor. [Dkt. 1-1 at 9, ¶ 81.] On the same day, the panel found that Reilley was "not responsible for non-consensual sexual intercourse" and submitted their written findings of fact to Patterson. [Dkt. 1-1 at 9, ¶ 86.] Five days later, on January 20, 2016, Patterson notified Reilley of the panel's findings. [Dkt. 1-1 at 9, ¶ 89.] On the same day or shortly thereafter, Butler removed the freeze from Reilley's transcript. [Dkt. 1-1 at 10, ¶ 90.] As a result of the delayed release, Reilley alleges he was unable to complete his transfer application to IU in time for the Spring 2016 semester. [Dkt. 1-1 at 10, ¶ 91.] Instead, he enrolled in classes at the College of DuPage for that semester. [Dkt. 1-1 at 10, ¶ 92.] Reilley completed his transfer to IU for the Fall 2016 semester but was unable to gain admission to IU's Kelly School of Business. [Dkt. 1-1 at 10, ¶¶ 95-96.] In addition, he joined the IU football team in the fall of 2016 but he was inadequately prepared for the season because he did not participate

in the weight training program and spring practice and he did not secure a scholarship from the football program. [Dkt. 1-1 at 11, ¶ 102-03.]

Butler retained Credit World Services, Inc., to assist in debt collections for unpaid tuition. [Dkt. 1-1 at 2, ¶ 14.] On August 30, 2017, Credit World Services sent a collection notice, on behalf of Butler, to Michael Reilley in the amount of $16,975.97.[3] [Dkt. 1-1 at 2, ¶ 15.] The collection notice was sent to the Father's home address, in the name of Michael Reilley, and did not differentiate whether the intended recipient was Reilley or Father. [Dkt. 1-1 at 3, ¶ 16.]

Reilley and Father originally filed this lawsuit in the Marion County Superior Court. On December 7, 2017, Defendants removed the case to this Court. [Dkt. 1.] On January 11, 2018, Defendants filed their Motion to Dismiss for Failure to State a Claim. [Dkt. 15.] On February 5, 2018, Plaintiffs filed their Motion for Leave to File Second Amended Complaint. [Dkt. 24.]

## II.   Discussion

### A.  Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level." *Twombly*, 550 U.S. at 555. The Court "construe[s] all well-pleaded facts and draw[s] all inferences in the light most favorable to the nonmoving party." *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

---

[3] Butler filed a counterclaim for $16,975.97—the balance of Reilley's unpaid tuition, room and board, student health insurance, and bookstore fees. [Dkt. 17.]

In their complaint, Plaintiffs allege negligence and intentional infliction of emotional distress against all Defendants, and allege a Title IX violation and breach of contract against Butler only. [Dkt. 25.] The Court first addresses the Title IX claim and then addresses the state law claims.

### 1. Federal Claim

In Count III Plaintiffs allege Title IX discrimination against Reilley by Butler during its investigation and disciplinary proceedings. Title IX states that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To sufficiently state a Title IX discrimination claim, a complaint must allege that the plaintiff was subjected to discrimination in an educational program and that the discrimination was on the basis of sex, *i.e.*, gender. *Doe v. Columbia College Chi.*, Case No. 17-CV-00748, --- F. Supp. 3d ---, ----, 2017 WL 4804982, at *6 (N.D. Ill. Oct. 25, 2017). That Butler is subject to Title IX is undisputed; however, as Butler correctly argues, the complaint failed to include sufficient factual allegations of discrimination based on gender. [*See* Dkt. 16 at 6–13.]

Reilley alleges that he belongs to a group protected under Title IX (male) and that he has a right not to be subjected to discipline when gender is a motivating factor in the decision to enforce Butler's disciplinary policy and impose sanctions. [Dkt. 1-1 at 13.] Reilley also alleges that Butler failed to conduct a prompt and impartial investigation and Butler provided him with a presumption of guilt, rather than innocence. [*Id.*] Further, he alleges that Butler's decision to withhold his transcripts was arbitrary and capricious and gender motivated. [*Id.* at 14.] In addition, Reilley alleges that Butler acted with deliberate indifference in investigating only

whether Doe consented, not whether he consented. [Dkt. 26 at 9.] The Court understands Reilley to be making a selective enforcement claim. The allegations, however, do not adequately state a claim for Title IX discrimination.

### a.   Gender Discrimination/Selective Enforcement

A selective enforcement claim alleges that the decision to initiate a disciplinary proceeding or the severity of the penalty, or both, was affected by the plaintiff's gender. *Yusuf v. Vassar* College, 35 F.3d 709, 715 (7th Cir. 1994). A plaintiff alleging selective enforcement under Title IX based on gender must "allege particular circumstances suggesting that gender bias was a motivating factor" in the decision to initiate a disciplinary proceeding or impose sanctions. *Id.* Allegations that suggest gender bias may include "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.* Conclusory allegations are insufficient to raise a plausible inference of gender bias. *Doe v. Purdue Univ.*, 281 F. Supp. 3d 754, 775–76 (N.D. Ind. 2017) (concluding plaintiff failed to allege facts to raise a plausible inference of gender bias where he did not allege "any specific statements, conduct, or a pattern of decision making suggestive of gender bias at Purdue"), *appeal filed* (7th Cir. Dec. 18, 2017) (No. 17-3565).

Reilley has failed to allege facts to create a plausible inference that gender bias was a motivating factor in the disciplinary proceeding against him or in the imposition of any sanctions.[4] He does not allege any statements by anyone involved in the disciplinary proceeding or any other Butler official to suggest gender motivation. Nor does he allege a pattern of decision making to suggest gender bias. Rather, Reilley makes only conclusory allegations of gender bias

---

[4] Here, the decision to initiate the disciplinary proceeding was made by Doe. The Court, however, understands Reilley's selective enforcement claim to focus on the proceeding that followed once Doe complained.

and alleges circumstances suggesting bias in favor of the alleged sexual assault victim. He argues that the "vast majority" of students accused of sexual misconduct are male and that Butler's policy which allows for punitive measures to be taken against an accused student before a finding of guilt "systematically and disproportionately discriminates against male students[.]" [Dkt. 26 at 6.]

But disparate-impact claims may not be brought under Title IX. *See Parker v. Franklin Cty. Cmty. Sch. Corp.*, 667 F.3d 910, 919 (7th Cir. 2012); *Doe v. Columbia Coll. Chi.*, Case No. 17-CV-00748, --- F. Supp. 3d ----, 2017 WL 4804982, at *6 (N.D. Ill. Oct. 25, 2017). And there is no allegation to suggest that Butler subjects male students accused of sexual misconduct to the disciplinary process because they are male rather than because they have been accused of sexual misconduct. Furthermore, Reilley offers no allegation that Butler treats female students accused of sexual misconduct more favorably than it treats male students so accused, which dooms his selective enforcement claim. *See Doe v. Purdue Univ.*, 281 F. Supp. 3d at 784 ("[T]o prevail on a 'selective enforcement' claim, the plaintiff must [allege] that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender."); *Prasad v. Cornell Univ.*, Civil Action No. 5:15-cv-322, 2016 WL 3212079, at *18 (N.D.N.Y. Feb. 24, 2016) (dismissing Title IX selective enforcement claim where plaintiff failed to allege that female students accused of sexual misconduct were treated more favorably than male students accused of sexual misconduct).

Gender-based discrimination, Reilley asserts, is evident because Butler ignored Doe's admission that she initiated oral sex without consent from Reilley and instead investigated and sanctioned him on the "dubious allegation of non-consensual intercourse." [Dkt. 26 at 7.] In

making this assertion, however, Reilley ignores the pertinent fact that Doe lodged a sexual assault complaint against *him*, and he never made a complaint against *her*.

Reilley imagines his case is like *Doe v. University of Chicago*, No. 16 C 08298, 2017 WL 4163960, at *5 (N.D. Ill. Sept. 20, 2017), where the court found the complaint sufficiently alleged gender discrimination in violation of Title IX, but the allegations in that case are not similar to those here. The plaintiff in *Doe v. University of Chicago* alleged that a university official intentionally and/or negligently encouraged the filing of a false complaint against the plaintiff. *Id.* The court concluded that "[i]f [the defendant] *intentionally* encouraged [the female student] to file a false complaint—that is, he knew or believed that her complaint was false and encouraged her to file it anyway," *id.* at *5 (emphasis in original),[5] it was plausible that the defendant did so based on gender bias, *id.* Furthermore, the complaint also alleged that the plaintiff asked the official whether he would have investigated the same conduct if it had been committed by a male student, and the official refused to answer. If the official had been treating males and females alike, the court found it plausible that the official would have answered the question. It was both the allegation that the official intentionally encouraged the filing of a false complaint and his failure to answer the question about gender that sufficiently alleged discrimination based on sex. *Id.*

In contrast, in the instant case, Doe initiated a sexual assault report against Reilley before talking to Butler's Dziwlik or Patterson. [*See* Dkt. 1-1 at 6, ¶¶ 36–42.] Thus, neither Patterson nor Dziwlik could have intentionally encouraged Doe to file her complaint, let alone a false complaint. And, although Reilley calls Doe's allegations "uncorroborated" and "dubious" [Dkt. 26 at 7–8], he makes no allegation that the defendants believed Does' complaint was false.

---

[5] The court emphasized there was some ambiguity on this point and directed the plaintiff to file a position statement confirming he was alleging that the university official intentionally encouraged the filing of a false report. *Id.* at *6.

Moreover, the fact that Dziwlik recommended that Doe's complaint move to a formal hearing despite the existence of other evidence suggesting that Reilley did not commit sexual misconduct does not give rise to a plausible claim of gender bias. As the *University of Chicago* court noted in regard to the female student's blog posts, Doe's statement that she voluntarily performed oral sex on Reilley after he unzipped his pants undermines her claim of sexual assault against him. [*See* Dkt. 1-1 at 8.] However, like the blog posts in *University of Chicago*, Doe's admission here is only one piece of evidence.

Reilley next argues that during his Title IX hearing, Butler treated Doe significantly better than him because of his gender. [Dkt. 26 at 8.] He alleges that the hearing was not fair and impartial because both Dziwlik and Patterson presented the evidence in the light most favorable to Doe and because they presumed he was guilty, rather than innocent. [*Id.*] In addition, Reilley alleges that the decision to freeze his transcript prior to a final determination was arbitrary and capricious, and improperly gender motivated. [*Id.*] These arguments are also without merit.

"Demonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged penetrators, is not the equivalent of demonstrating bias against male students." *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015) (citing *Bleiler v. Coll. of Holy Cross*, No. 11–11541–DJC, 2013 WL 4714340, at *12 (D. Mass. Aug. 26, 2013); *King v. DePauw Univ.*, No. 2:14–cv–70–WTL–DKL, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014); *Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573, 579 (E.D. Va. 1996)); *see also Doe v. Purdue Univ.*, 281 F. Supp. 3d at 778 (differentiating "victim-based" allegations from "gender-based" allegations). Reilley asserts no facts to suggest that Butler would have treated a female accused of sexual assault any differently in its investigation or

disciplinary proceeding. As a result, Reilley failed to plead sufficient facts to suggest that Butler is liable under Title IX based on a gender discrimination theory.

### b. Deliberate Indifference

Butler "may be held liable for 'deliberate indifference to known acts of harassment,' of one student by another." *Doe v. Columbia Coll. Chi.*, Case No. 17-CV-00748, --- F. Supp. 3d ---, 2017 WL 4804982, at *6 (N.D. Ill.  Oct. 25, 2017). Reilley argues that Butler acted with deliberate indifference when it took the position that Doe was the victim and Reilley was the accused, despite evidence suggesting otherwise. [Dkt. 26 at 9.] He argues that Butler failed to investigate Doe after she confessed to performing oral sex on him without obtaining his consent in direct violation of the school's policy. [Dkt. 26 at 10.] As Butler correctly pointed out, however, this argument "is more than a stretch." [Dkt. 31 at 7.]

First and importantly, Reilley never made a claim of sexual assault against Doe. [*See* Dkt. 1-1.] This distinguishes this case from those cited by Reilley to support his claim of deliberate indifference: *Yap v. Northwestern University*, 119 F. Supp. 3d 841, 849–50 (N.D. Ill. 2015) (plaintiff claimed university failed to properly investigate his complaints of sexual harassment because he was male), and *Marshall v. Indiana University*, 170 F. Supp. 3d 1201, 1210 (S.D. Ind. 2016) (plaintiff alleged he was expelled from university and banned from all campuses for an alleged sexual assault but defendants failed to investigate plaintiff's report that a female student sexually assaulted him). Nor did Reilley allege that Doe sexually harassed him.

Second, even assuming that Reilley did not have to make a claim of sexual assault in order for Butler to begin the investigation, Reilley pleaded no facts to suggest any sexual harassment or misconduct against him.[6] [*See* Dkt. 1-1.] In fact, Reilley pleaded that "[w]hile in

---

[6] Reilley seems to confuse the standard of review for this Motion to Dismiss and the standard of review for his Motion for Leave to File Amended Complaint. For purposes of a motion to dismiss, the Court can only review the

the bathroom, Doe consensually performed oral sex on Reilley" and "[a]ll sexual contact that occurred in the bathroom was consensual, as defined by the guidelines in the Butler handbook." [Dkt. 1-1 at 6.] These allegations negate any possibility that Butler could have acted with deliberate indifference to known acts of sexual harassment or misconduct by Doe against Reilley.

Moreover, a careful review of the complaint shows that during the investigation process, Reilley took the position that his encounter with Doe was consensual and that oral sex *never happened*. He told Dziwlik that he was "buzzed" but "functionable" [sic], and they were "hooking up" in the bathroom, which he defined as kissing and touching, but he said they did not have sexual intercourse. [Dkt. 25-1 at 3.] He also told Dziwlik that "[Doe] put him on the toilet and then they moved to the floor" but he was "adamant [that] there was no oral sex performed on either of them." [*Id.*] He stated that they were "about to have sex but didn't" because a banging on the bathroom door had interrupted them. [*Id.*] Finally, Reilley stated that his interaction with Doe ended with kissing, and that they later said goodbye and parted ways. [*Id.* at 4.] Reilley has not alleged sexual harassment directed at him by Doe (or anyone else for that matter). Nor has he alleged that Butler had knowledge of any supposed harassment.

Finally, Reilley complains that his transcript was withheld from him and this interfered with his ability to transfer. But again, he has not made any allegation to raise a plausible inference that his transcript was withheld from him for any period of time based on his gender. At most, the allegations suggest his transcript was withheld because of his status as a student accused of sexual misconduct, which is insufficient to state a Title IX claim. *See, e.g., Doe v.*

---

facts pleaded in Reilley's Amended Complaint, not the additional facts pleaded in his proposed Second Amended Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. at 589 ("[A]t the motion to dismiss stage, a judge assumes that all the allegations in the complaint are true." (quotation and citation omitted)).

*Columbia Coll. Chi.*, 2017 WL 4804982, at *7 (concluding that allegations the plaintiff was harassed because of his relationship with the complainant and because of "his status as a person accused of sexual assault" were insufficient to show gender motivation); *Doe v. Univ. of Chi.*, 2017 WL 4163960, at *7 ("sexual-assault accusations on their own are not inherently gendered").

Reilley failed to plead sufficient facts to suggest a Title IX claim against Butler based on the deliberate indifference theory.

Accordingly, the Court finds that Reilley failed to plead sufficient facts to suggest a plausible Title IX claim against Butler. The Court proceeds to consider the state law claims.

### 2. State Law Claims

#### a. Negligence

In Count I, Reilley and Father allege a negligence claim against all Defendants. Specifically, they argue that all Defendants owed Reilley a reasonable duty of care and Butler owed Father a duty to properly present evidence at the Title IX hearing. [Dkt. 1-1 at 12.] They allege Butler failed to properly hire and train its Title IX administrators, and failed to provide proper oversight, safety measures, and monitoring during the Title IX investigations. Plaintiffs further allege that Patterson and Dziwlik failed to properly prepare the Report and failed to properly present the evidence at the Title IX hearing as set forth in the Butler handbook. [Dkt. 1-1 at 13.]

Under Indiana law, the three elements of negligence are: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004). The Indiana Supreme Court has explained a duty that may arise under a special relationship: "A duty of care

may arise when one party assumes such a duty, either gratuitously or voluntarily. The assumption of such a duty creates a special relationship between the parties and a corresponding party to act in the manner of a reasonable prudent person." *Smith v. Delta Tau Delta, Inc.*, 9 N.E.3d 154, 160 (Ind. 2014) (quoting *Yosh v. Wabash Coll.*, 3 N.E.3d 509, 517 (Ind. 2014)).

Courts have "specifically rejected negligence claims by students claiming they were wrongly disciplined for sexual assault and that the university did not properly apply its policies" based on the absence of a legal duty of care. *Doe v. Columbia Coll. Chi.*, Case No. 17-CV-00748, --- F. Supp. 3d ---, ----, 2017 WL 4804982, at *16 (N.D. Ill. Oct. 25, 2017) (dismissing student's negligence claim against college for its suspension of him based on sexual assault complaint, citing *Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214, 1229 (D. Or. 2016) (dismissing negligence claims brought by students alleging they were wrongfully disciplined for sexual misconduct because no special relationship exists between university and students accused of sexual assault); *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 228 (D. Mass. 2017) (granting judgment on the pleadings on negligence claim made by student expelled for violating university's sexual misconduct policy because university had no legal duty relating to the implementation of the disciplinary proceedings); *Doe v. Trs. of Bos. Coll.*, No. 15-CV-10790, 2016 WL 5799297, at *28 (D. Mass. Oct. 4, 2016) (granting summary judgment on claim that university defendants owed student a duty to conduct the disciplinary process with care upon finding no such duty exists)).

Plaintiffs argue that Indiana law recognizes a special relationship between students and universities so as to impose a duty of care, citing *Chang v. Purdue University*, 985 N.E.2d 35 (Ind. Ct. App. 2013). But the *Chang* court did not recognize a special relationship between a student and university imposing a duty of care in disciplinary proceedings; rather, the court

referenced and addressed a contractual relationship. *Id.* at *46. The *Chang* plaintiff did not assert

a negligence claim. To the extent Plaintiffs allege a duty based on the student handbook, that

claim will be addressed in connection with the breach of contract claim. Plaintiffs also cite

*Leader v. Harvard University Board of Overseers*, 2017 WL 1064160 (D. Mass. Mar. 17, 2017),

but in that case, the defendant university conceded it owed a duty of care to the student based on

the university-student relationship. *Id.* at *2, *5. Butler has made no such concession here.

Plaintiffs cite no authority to establish a special relationship between a student and

university under Indiana law giving rise to a duty arising in the context of university disciplinary

proceedings. And other than an alleged contractual duty, Plaintiffs have not alleged the basis for

any other duty of care running from Butler to Father.  Therefore, the Court concludes that Butler

did not have a special relationship with Reilley or Father that created a duty of care and

recommends that the negligence claims be dismissed.

### b.  Intentional Infliction of Emotional Distress

Reilley's second state law claim is that all Defendants intentionally caused him severe

emotional distress. [Dkt. 1-1 at 13.] He alleges that Patterson and Dziwlik both acted with an

intentional and/or reckless disregard for his welfare as a student. He specifically identifies the

following conduct as the basis for his claim: "withholding his transcripts, scheduling a meeting

immediately prior to his final exam, and claiming in the report that the allegations were proven

beyond a 'preponderance of the evidence.'" [Dkt. 1-1 at 14.] He further alleges that Butler was

responsible for the actions of Patterson and Dziwlik under the doctrine of respondeat superior.

To state a claim for intentional infliction of emotional distress ("IIED") under Indiana

law, a plaintiff must allege that a defendant: "(1) engage[d] in extreme and outrageous conduct

that (2) intentionally or recklessly (3) cause[d] (4) severe emotional distress to another." *Bd. of*

*Trs. of Purdue Univ. v. Eisenstein*, 87 N.E.3d 481, 500 (Ind. Ct. App. 2017) (citing *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 959–60 (Ind. Ct. App. 2014)). Conduct is "extreme and outrageous" only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Miller*, 11 N.E.3d at 960)). The conduct at issue must "'exceed[] all bounds usually tolerated by a decent society and cause[] mental distress of a very serious kind.'" *Id.* (quoting *Miller*, 11 N.E.3d at 960)). Given the high bar for extreme and outrageous conduct, several courts have dismissed IIED claims challenging a university's disciplinary proceedings. *See, e.g.*, *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 186 (D. Mass. 2017) (collecting cases); *Doe v. Columbia College Chi.*, Case No. 17-CV-00748, --- F. Supp. 3d ---, ----, 2017 WL 4804982, at *16–17 (N.D. Ill. Oct. 25, 2017) (citing cases).

Even if the Court assumes that Butler's disciplinary proceeding was unfair, unreasonable, and negligent, *see Doe v. Univ. of Chi.,* No. 16 C 08298, 2017 WL 4163960, at *12 (N.D. Ill. Sept. 20, 2017), the factual allegations do not rise to the level of "extreme and outrageous" conduct required to state a claim for IIED. In contrast with *Doe v. University of Chicago*, the complaint does not allege that Butler intentionally encouraged Reilley's accuser to file a *false* sexual assault complaint against him. The fact that Butler conducted an investigation, even despite evidence favoring Reilley, does not amount to extreme and outrageous conduct. *See, e.g.*, *Doe v. The Trs. of the Univ. of Penn.*, 270 F. Supp. 3d 799, 827 (E.D. Pa. 2017) (dismissing IIED claim where student accused of sexual assault was subjected to disciplinary proceedings and alleged university officials distorted facts, improperly attacked his credibility, threatened him with unjustified expulsion and imposed an unfair sanction on him); *Fellheimer v. Middlebury Coll.*, 869 F. Supp. 238, 247 (D. Vt. 1994) ("A College's decision, when confronted with a

female student's accusation of rape, to confront the male student with the charges, hold a hearing, and support the findings of the initial tribunal on appeal, even where various procedural errors are alleged, cannot form the basis of an IIED claim."). Similarly, that Dziwlik and Patterson withheld Reilley's transcripts,[7] scheduled a meeting immediately prior to one of his final exams, and did not release the transcripts until five days after the panel determined he was not responsible for sexual assault, even if unfair and unreasonable, are insufficient to rise to the level of extreme and outrageous conduct. Therefore, the Court concludes that the Complaint fails to state an IIED claim upon which relief can be granted and recommends that this claim be dismissed.

### c. Breach of Contract

Reilley's final claim is that Butler breached its express and implied contract with him by failing to protect his rights and provide him Due Process during the investigation of Doe's complaint. [Dkt. 1-1 at 15.] He alleges that Butler's breach of contract was a proximate cause of his inability to transfer to IU for the Spring 2016 semester, and detrimentally affected his general welfare as a Butler student. [*Id.*] He also alleges that Butler failed to adhere to the terms of its student handbook and is not entitled to any further payment from him or Father. [*Id.* at 16.]

As an initial matter, Reilley did not plead any facts that suggest the existence of an express contract between Reilley and Butler. [*See* Dkt. 1-1.] Thus, the Court assumes he has pleaded the existence of an implied contract arising out of the student handbook between himself and Butler. *See Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012); *Neel v. Ind. Univ. Bd. of Trs.*, 435 N.E.2d 607, 610 (Ind. Ct. App. 1982) (characterizing the relationship between a student and university as one of implied contract).

---

[7] This is especially true since Reilley owed a debt to Butler for tuition and other expenses. [Dkt. 1-1 at 3, 15.]

Merely alleging the existence of an implied contract is insufficient to state a claim, however. A former student alleging a breach of contract by a university must be "specific about the source of [the] implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013)). The complaint alleges that Butler violated its "contract" with Reilley by failing to protect his rights and provide him Due Process during the investigation of Doe's complaint and by failing to follow the "terms of its student handbook." [Dkt. 1-1 at 14–15.] The complaint does not identify the specific contractual promises Butler made to Reilley or the promises he made in return. The general reference to the "terms" of the student handbook is too vague to allege a contractual promise with sufficient specificity.

Furthermore, a university breaches its implied contractual obligations to a student in a disciplinary proceeding context if it acts "illegally, arbitrarily, capriciously, or in bad faith." *Chang v. Purdue Univ.*, 985 N.E.2d 35, 47 (Ind. Ct. App. 2013); *see also Amaya v. Brater*, 981 N.E.2d 1235, 1241 (Ind. Ct. App. 2013) ("It is well settled that before a court will intervene into the implied contractual relationship between student and university, there must be some evidence that the university acted arbitrarily or in bad faith."). "Bad faith in this context 'is not simply bad judgment or negligence, rather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity.'" *Chang*, 985 N.E.2d at 47 (quoting *Amaya*, 981 N.E.2d at 1240).

Here, Reilley has not alleged sufficient facts to suggest that Butler acted illegally, arbitrarily, capriciously, or in bad faith during the investigation of Doe's complaint. Reilley asserts that Butler acted contrary to the terms of its student handbook throughout its investigation. In particular, he asserts bad faith in that Butler allowed Doe's complaint to proceed to a hearing despite a lack of evidence, and in Butler's assumption that Reilley committed sexual

misconduct despite "overwhelming evidence that proved otherwise." [Dkt. 26 at 19.] He also argues bad faith based on a "biased" investigation in favor of Doe and the presentation of evidence in her favor. Finally, Reilley argues bad faith in the continued withholding of his transcripts. But Reilley offers only conclusory allegations of bad faith and such conclusory allegations are insufficient to state a claim. *See Twombly*, 550 U.S. at 555.

Reilley relies on *King v. DePauw University*, Cause No. 2:14-cv-70-WTL-DKL, 2014 WL 4197507 (S.D. Ind. Aug. 22, 2014), but the case is distinguishable based on several facts, including that there was a substantial delay in the investigation, which could have prejudiced the accused student; after the substantial delay by the complaining student in making a complaint, the Board refused to give the accused an additional week to prepare for a hearing; the investigation "consisted almost exclusively of interviews of witnesses suggested by" the complaining student; the questions asked at the disciplinary hearing were incomplete; the complaining student's advisor was married to the university's Title IX coordinator, who obtained and summarized a statement from the accused that was used to discredit his testimony at the hearing; and the accused's advisor was "ill-equipped to be of any real assistance to him." *Id.* at *13. Nothing similar is alleged in the instant case.

What's more, the Report which is attached to the complaint, reveals nothing that could be considered bad faith. The Report indicates that Dziwlik recognized there was conflicting testimony and evidence about whether consent was given and thus recommended Doe's complaint move to a hearing so the panel could determine the evidence's weight. [*See* Dkt. 25-1.] The complaint and other attached documents also demonstrate that Butler held a hearing after a thorough investigation and that the Hearing Panel considered evidence from both parties, text messages between Patterson and the coordinator of the hospital where Doe was examined after

the alleged assault, statements from several witnesses, and Doe's medical report. [Dkt. 25-2.]
The panel voted 3-0 that Reilley was not responsible for non-consensual sexual intercourse
shortly after the hearing. [*Id.*] Although Butler did not release Reilley's transcripts until five days
after the panel reached its decision, that fact is not enough to show that Butler acted illegally,
arbitrarily, capriciously or in bad faith so as to support a breach of contract claim.

For these reasons, the Court finds that the complaint fails to state a claim for breach of
contract and recommends that the claim be dismissed.

### B.  Motion for Leave to File Second Amended Complaint

Plaintiffs seek leave to add additional factual allegations to support their gender-based
discrimination claim under Title IX of the Education Amendments Act of 1972 ("Title IX") and
state law claims. Defendants object, arguing that the additional factual allegations included in the
proposed second amended complaint are still deficient to sufficiently state a claim of gender-
based discrimination or to establish the elements of the state law claims.

Federal Rule of Civil Procedure 15(a) provides that a party "may amend its pleading only
with the opposing party's written consent or the court's leave" and that leave should be freely
given "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, where the proposed
amendment would be futile, meaning that the amended pleading would not survive a motion to
dismiss, the court may deny leave to amend. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807
(7th Cir. 2015). The Court has reviewed the proposed new factual allegations [Dkt. 25 at 4, 7–8,
9] and none of them cure the deficiencies in the complaint discussed above. In particular, the
Court notes that the allegations that Butler's decision to investigate Reilley and not to investigate
Doe "was gender based discrimination" [Dkt. 25 at 8 ¶ 67; *see also id.* at 8 ¶ 69] is wholly
conclusory and insufficient to state a Title IX claim that is plausible on its face. Therefore, it is

recommended that the District Judge in his discretion deny the motion for leave to file second amended complaint.

## III.  <u>Conclusion</u>

For the foregoing reasons, it is recommended that the District Judge **GRANT** Defendants' Motion to Dismiss [Dkt. 15] and **DENY** Plaintiff's Motion for Leave to File Second Amended Complaint [Dkt. 24].

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Dated:  30 MAY 2018

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles C. Hayes
HAYES RUEMMELE LLC
charleshayes.atty@gmail.com

Dorothy D. McDermott
JACKSON LEWIS PC (Indianapolis)
Dorothy.McDermott@jacksonlewis.com

Jane Ruemmele
HAYES RUEMMELE LLC
janeruemmele@gmail.com

Melissa K. Taft
JACKSON LEWIS PC (Indianapolis)
melissa.taft@jacksonlewis.com

Craig W. Wiley
JACKSON LEWIS PC (Indianapolis)
craig.wiley@jacksonlewis.com